IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES,** | **CRIMINAL ACTION** |
| v. | |
| **JAMAL FAULKNER** | No. 01-457-7 |

**MEMORANDUM OPINION**

**GOLDBERG, J.** February 13th, 2023

    Before me is a motion to reduce Jamal Faulkner's sentence pursuant to Section 404 of the First Step Act of 2018, which retroactively applied modified penalties for crack cocaine offenses. Faulkner was a member of a large drug distribution ring that operated out of North Philadelphia from 1992 through 2001. In connection with this conduct, Faulkner was convicted of conspiracy to distribute crack cocaine, murder in furtherance of a continuing criminal enterprise ("CCE"), and carrying a firearm in relation to a drug trafficking offense. Faulkner has served the entirety of his sentence for the murder in furtherance conviction (22 ½ years).

    Faulkner now moves for a reduction in his sentence because his crack distribution offenses were imposed under a statutory section that was modified by the Fair Sentencing Act. For the following reasons and after a hearing on this motion, I find that a sentence reduction is warranted in the form of a reimposed sentence of eighty-four (84) months incarceration on the crack count.

**I.  Factual and Procedural Background**

    As a member of a large-scale drug distribution ring, Faulkner was responsible for distribution of over 400 kilograms of crack in the Philadelphia area. In addition to drug distribution, various members of the conspiracy carried out acts of violence which included several homicides. Faulkner eventually pled guilty to one count of conspiracy to distribute more than 50

grams of cocaine base (crack) in violation of 21 U.S.C. § 846; one count of murder in furtherance of a CCE ("CCE murder") in violation of 21 U.S.C. § 848(e)(1)(A); and one count of carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). (PSR ¶ 4).

At his plea hearing, Faulkner stipulated that he was responsible for the distribution of 250 kilograms of crack. He was also subject to a two-level enhancement for distributing crack within a school zone, a three-level enhancement for his supervisory role, and a three-point reduction for acceptance of responsibility. (PSR ¶ 96). Faulkner's total offense level was 42, and his criminal history score was category I, resulting in a guideline range of 360 months to life. (Id. ¶ 99.) Faulkner was also subject to a ten-year mandatory minimum on the drug conspiracy count, a twenty-year mandatory minimum on the CCE murder count, and a ten-year mandatory minimum on the 924(c) count.

On November 12, 2003, the Honorable James T. Giles sentenced Faulkner to 120 months on the drug count and 270 months on the CCE murder count, to run consecutively to one another. Judge Giles additionally sentenced Faulkner to 120 months on the 924(c) count, to run concurrently to the sentence imposed on the other counts. Faulkner filed a motion for a reduction in sentence under the First Step Act on July 18, 2019 and has since filed a supplement to his motion (ECF Nos. 825, 878). The case was reassigned to my docket in February of 2021.[1] On June 27, 2022, I granted Faulkner's motion for a hearing so the parties could present argument regarding

---

[1] Faulkner's original motion for a hearing and reduced sentence was granted on September 12, 2019, by the Honorable Jan E. DuBois who was assigned to the case upon the retirement of Judge Giles. (ECF No. 841). However, a resentencing hearing was never held, as Judge DuBois granted defense counsel's request for a stay of the proceedings pending a decision by the United States Court of Appeals for the Third Circuit in United States v. Jackson, 964 F.3d 197 (3d Cir. 2020), which affected Faulkner's eligibility for resentencing.

resentencing. (ECF No. 990). I held hearings on Faulkner's motion on September 29, 2022 and December 1, 2022.

## II. Legal Framework and Analysis

### A. The First Step Act

Once a sentence of imprisonment has been imposed, that sentence is final and may only be modified under limited circumstances. In re Morris, 345 Fed. Appx. 796, 797 (3d Cir. 2009). One of those circumstances exists when the sentencing range for a particular offense has been lowered by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(2).

In 2010, Congress enacted the Fair Sentencing Act, which reduced the sentencing disparities between offenses for crack and powder cocaine from 100:1 to 18:1. Pub. L. No. 111-220, 124 Stat. 2372. Prior to the Act's passage, the five and ten-year mandatory minimum sentences for crack offenses under § 841(a)(1) and (b)(1)(A) were triggered by offenses involving 5 and 50 grams, respectively. Id. Since the Act's passage, the mandatory minimums are now triggered by 28 and 280 grams. Id.

In 2018, Congress passed the First Step Act, which retroactively applied the modified penalties set forth in the Fair Sentencing Act to defendants sentenced before August 3, 2010. First Step Act of 2018, 115 Pub. L. No. 391, § 404, 132 Stat. 5194, 5222. The First Step Act states that "a court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." 115 Pub. L. No. 391, § 404. The First Step Act defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." Id. A sentence may not be reduced if either: (1) it has already been reduced; or (2) a previous motion to reduce the sentence was denied

3

after a complete review on the merits.  Id.

      **B.**      **First Step Act Eligibility after *United States v. Jackson***

When the modified penalties for crack offenses became retroactive under the First Step Act, a question arose as to who those modified penalties would apply to.  In United States v. Jackson, the United States Court of Appeals for the Third Circuit considered whether eligibility for retroactive relief under the First Step Act was determined by the statute of conviction, or by the actual quantity of crack involved in the offense.  964 F.3d 197 (3d Cir. 2020).  The government argued that eligibility for relief should be determined by the actual quantity of crack involved in the offense, advocating for an adoption of a "conduct-based approach."  Id. at 202.  Under that approach, an offender convicted of possessing "five grams or more" of crack pursuant to § 841(b)(1)(A), but who actually possessed a drug quantity above the modified twenty-eight-gram threshold (for example, thirty grams), would not be eligible for First Step Act consideration.  Defendants, on the other hand, argued that eligibility should turn on the statute of conviction, regardless of the actual drug quantity.  Id.

The Third Circuit ultimately found that eligibility under the First Step Act should be determined by the statute of conviction.  Id.  The court noted, however, that "we expect that a district court, in exercising its discretion, will [also] consider the actual quantity of drugs a defendant possessed."  Id. at 204.  Accordingly, a defendant may seek a reduction in their sentence under the First Step Act if they were sentenced for violating a "covered offense" under the Act, even if the actual quantity of drugs they were convicted of possessing exceeds the modified penalties under the statute.

### C.    Faulkner is Eligible for Discretionary Relief

I previously denied motions seeking First Step Act relief filed by three of Faulkner's codefendants, Daniel Coach (ECF No. 993), Clifton Junius (ECF No. 991), and Richard Potts (ECF No. 988). Like Faulkner, these defendants were convicted of conspiracy to distribute crack cocaine and murder in furtherance of a continuing criminal enterprise. These motions were denied primarily because I declined to find that their murder offenses were covered under the First Step Act. For all three of Faulkner's codefendants, the sentences for their murder counts and drug counts were imposed to run concurrently, rather than consecutively. While there was no dispute that the drug counts in these other cases were covered offenses under the First Step Act, all three co-defendants argued their murder counts were also covered. I disagreed that the murder counts were covered, reasoning that when Congress reduced the sentencing disparities for low-level crack cocaine dealers through the Fair Sentencing Act, it did not also intend to amend the statutory penalties for violent crimes associated with crack cocaine offenses. (ECF No. 993). Thus, because the drug and murder convictions were to be served concurrently, resentencing these defendants on the drug counts alone would be pointless.

Here, the parties do not dispute that Faulkner's drug offense under § 841(b)(1)(A) is a "covered offense," as the subsection's statutory penalties have been modified by the Fair Sentencing Act. Furthermore, the government concedes that because Faulkner's sentences on each count were imposed to run consecutively and he has already served in excess of his sentence on the murder count, I retain discretion to grant relief on the drug count alone.

### D.    Faulkner's Motion for Reduction in Sentence

When deciding a motion for a reduced sentence under the First Step Act, the district court must include in its analysis "an accurate calculation of the amended guidelines range at the time

5

of resentencing," as well as "a thorough renewed consideration of the [18 U.S.C.] § 3553(a) factors" to the extent they are applicable. United States v. Easter, 975 F.3d 318, 325¬26 (3d Cir. 2020). However, defendants are not entitled to a plenary resentencing hearing. Id. at 326. Some of the factors to be considered under § 3553(a) include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentenced imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with correctional treatment. § 3553(a)(1) and (2). Courts should also consider "the particular circumstances of the case," as well as "post-sentencing developments, such as health issues or rehabilitation arguments." Easter, 975 F.3d at 326. Ultimately, the decision to impose a reduced sentence is discretionary. Id.

      I held a hearing on September 29, 2022, during which Faulkner's mother and sister testified on his behalf. During that hearing, a disagreement arose amongst counsel as to the amended guideline range and the applicable sentencing computation. I thus continued the hearing pending submission of a joint letter indicating what the agreed upon amended guideline range and sentence computation would be at the time of resentencing. The parties submitted this letter on October 6, 2022 (ECF No. 1021), and I held a follow-up hearing on December 1, 2022, where the parties clarified their respective positions on those two remaining issues.

      The parties agree that as of September 2022, Faulkner had served 279 (presently 284) months of his total 390-month sentence. Regarding the crack distribution sentence, Faulkner has served approximately fourteen months, and thus, Faulkner has approximately one hundred and six (106) months left to serve on his 120-month sentence for crack distribution. His projected release date, with good time credit, is September 29, 2027. The parties also stipulate that the guideline

range on the crack and murder counts continues to be 360 months to life. This is because Faulkner stipulated that he was responsible for 250 kilograms of crack, and this amount was used to calculate his guideline range. As the United States Supreme Court has directed that courts may not revisit changes in guideline determinations other than those that flow from the Fair Sentencing Act,[2] Faulkner remains subject to the same guideline range as existed at his original sentencing hearing. However, as noted above, Faulkner has already served the entirety of time imposed for the murder count (270 months). Thus, as defense counsel notes, I may consider, as a point of reference only, the guideline range that would apply to the crack count by itself. That range, with the multiple-count adjustment removed, would be 292 to 365 months. (ECF No. 1021, p. 3).

With all of this background in mind, and upon consideration of the offense conduct, including the actual quantity of drugs, as well as post-sentencing developments described below and a renewed consideration of the § 3553(a) factors, I will grant Faulkner a partial reduction of the remainder of his sentence. Several aspects of the record support the exercise of this discretion.

First, with respect to the history and characteristics of the defendant, Faulkner was only twenty-two years old when he committed his underlying offenses. § 3553(a)(1). While not minimizing the nature and seriousness of her client's crimes, Faulkner's counsel cited compelling scientific research regarding adolescent brain development which indicates that the area of the brain that governs reasoning and impulse control continues to mature into a person's early to mid-twenties. (Def.'s Mot. p. 7–10, ECF No. 878).

Brain development can also be delayed from emotional and physical trauma experienced during childhood. When Faulkner was just ten years old, he witnessed his father commit a murder, which resulted in his father being sentenced to life in prison. Faulkner also suffered additional

---

[2] Concepcion v. United States, 142 S. Ct. 2389, n. 6 (2022).

"severe adverse childhood experiences" ("ACEs") growing up in an underprivileged and violent neighborhood, all of which his sister detailed in a character letter attached to Faulkner's motion.

The nature and circumstances of the offense, particularly Faulkner's role in the organization, also weigh in favor of a partial sentence reduction. § 3553(a)(1). Members of the organization were divided into groups that each played a specific role – Daniel Coach was the "owner," and below him were "managers," "enforcers," "caseworkers," "packagers," "sellers," and "lookouts." (PSR ¶ 20). According to the PSR, Faulkner was a "caseworker" responsible for delivering bundles of crack to the sellers at houses owned by the organization or corners where the operation's drug sales were to occur. (Id.) Caseworkers also picked up cash from the sellers during or at the end of each shift and returned the money to the corner managers. (Id.) As a caseworker, Faulkner was several seniority levels below the "owner" of the operation and had less supervisory authority than both "enforcers" and "managers."[3] (Id.) I have also carefully considered the organization's violent activity, and that Faulkner was involved in planning a murder of a rival drug dealer, but was not present for the murder and did not pull the trigger. (Id. ¶¶ 19–21).

Additionally, upon consideration of post-sentencing developments under Easter, I am persuaded by the rehabilitative progress Faulkner has made while incarcerated. He has received his GED and has taken courses in a variety of subjects including small business administration, re-entry, finance, and life coaching. He has also remained consistently employed in various positions

---

[3] Attorney General Merrick Garland recently issued a Memorandum instructing federal prosecutors in crack cocaine cases to advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine. Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases, Op. Att'y Gen. (Dec. 16, 2022). This guidance is part of an overall effort to eliminate the crack-to-powder sentencing disparities and promote the equivalent treatment of crack and power cocaine offenses. I note this Memorandum as it may relate to § 3553(a)(6) and the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct.

within prison throughout his incarceration. His disciplinary record reflects a few minor infractions, but none within the last five years. Faulkner has also maintained in close contact with his family members and close friends, several of whom submitted character letters and in person testimony on his behalf. All indicated their support of his efforts to reintegrate into society. (Def.'s Mot., Ex. A).

Faulkner also spoke on his own behalf at the September hearing, expressing credible remorse for his actions and characterizing his twenty-three years spent in prison as a "humbling" experience that has given him a new perspective on life. In terms of his plans for the future, Faulkner has begun writing screenplays and is currently collaborating on a project with a close friend who works in Hollywood. He plans to move into his mother's home upon his release and hopes to eventually pursue writing as a career. I find Faulkner's positive conduct in prison as well as his maintenance of meaningful relationships with members of his community to be promising indicators for his successful reintegration into society.

However, due to the seriousness of the offense conduct and the amount of drugs involved, I decline to impose a sentence of time served as Faulkner has requested. The government has effectively emphasized that although Faulkner is eligible for resentencing, I should still consider the actual quantity of drugs he possessed under Jackson – 250 kilograms – which is far above the increased 280-gram threshold of the Fair Sentencing Act necessary to trigger the ten-year mandatory minimum he was already sentenced under. I must consider both the quantity of drugs involved in this case as well as the violent nature of the crimes as a whole. In order to reflect the seriousness of the offense and promote respect for the law, I find that a partial reduction of 36 months is warranted.

An Amended Judgment follows.